**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

STEVEN D. DURAND                          *
                                          *
                    Plaintiff,            *
v.                                        *
                                          *
FRANK BISIGNANO,                          *          No. 4:25-cv-01191-LPR-JJV
Commissioner,                             *
Social Security Administration,           *
                                          *
                    Defendant.            *

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

**INSTRUCTIONS**

This recommended disposition has been submitted to United States District Judge Lee P.

Rudofsky.  The parties may file specific objections to these findings and recommendations and

must provide the factual or legal basis for each objection.  The objections must be filed with the

Clerk no later than fourteen (14) days from the date of the findings and recommendations.  A copy

must be served on the opposing party.  The district judge, even in the absence of objections, may

reject these proposed findings and recommendations in whole or in part.

**RECOMMENDED DISPOSITION**

Steven D. Durand ("Plaintiff") has appealed the final decision of the Commissioner of the

Social Security Administration ("SSA") to deny his claim for a period of disability, disability

insurance benefits, and supplemental security income.  The Administrative Law Judge ("ALJ")

concluded he had not been under a disability within the meaning of the Social Security Act because

he could perform other jobs that exist in significant numbers in the national economy despite his

impairments.  (Tr. 2688-2704.)

This review function is extremely limited.  A court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and to analyze whether Plaintiff was denied benefits due to legal error. *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997); *see also*, 42 U.S.C. § 405(g).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Reynolds v. Chater*, 82 F.3d 254, 257 (8th Cir. 1996).

In assessing the substantiality of the evidence, courts must consider evidence that detracts from the Commissioner's decision as well as evidence that supports it; a court may not, however, reverse the Commissioner's decision merely because substantial evidence would have supported an opposite decision. *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993).

This case has a long history dating back to August 2015 when Plaintiff filed his initial application for benefits.  An ALJ denied benefits finding "substance use disorder [was] a contributing factor material to the determination of disability because the claimant would not be disabled if he stopped the substance use." (Tr. 31.)  Claimants are not eligible for disability benefits due to drug or alcohol abuse.  Effective March 29, 1996, Titles II and XVI of the Social Security Act were amended to eliminate alcoholism and drug abuse as a basis for obtaining disability insurance and supplemental security income benefits.  42 U.S.C. § 423(d)(2)(C); *see Newton v. Chater*, 92 F.3d 688, 695 n. 3 (8th Cir.  1996) (interpreting Contract with America Advancement Act of 1996, Pub.L. No.  104-121, § 105, 110 Stat.  847, 852-55).  A Plaintiff will become eligible to receive benefits only if his "remaining limitations" are disabling and this disability is independent of his alcoholism or drug abuse. *See* 20 C.F.R. § 416.935 (b) (1998).

Plaintiff appealed the decision finding him not disabled and, while his case was pending in federal court, the Commissioner filed an unopposed Motion to Remand pursuant to "sentence four"

within the meaning of 42 U.S.C. § 405(g) and *Melkonyan v. Sullivan*, 501 U.S. 89 (1991). *Durand v. SSA*, 4:18-cv-00727-JTR (Doc. Nos. 14-16.)

Thereafter, an ALJ issued a partially favorable decision finding Mr. Durand disabled as of August 1, 2017. (Tr. 2876-2901.) This second decision denied disability insurance benefits from August 10, 2015, through the date of last insured, but granted supplemental security income beginning August 1, 2017. (Tr. 2901.) Before this administrative decision was final, the Appeals Council assumed jurisdiction and affirmed the ALJ's finding regarding supplemental security income but vacated the "decision only with respect to the issue of disability from November 3, 2014, through July 31, 2017, and remanded this case to an Administrative Law Judge for resolution of the following issue during that period." (Tr. 2688.) As the ALJ explained:

> To simplify the procedural history here, Mr. Durand, what – the posture that we're currently in is you had a prior hearing before me where I issued a partially favorable decision that found you disabled as of August the 1st of 2017; you appealed that decision, and the Appeals Council remanded a portion of that decision, specifically between your alleged onset date in June of 2014 up to the time of July 31st of 2017, the point where in my prior decision I had found that at that point you were not disabled.

(Tr. 2756.)

So, the question before the Social Security Administration became whether Mr. Durand was disabled from November 3, 2014,[1] through July 31, 2017. The Commissioner determined he was not. And after careful review of the pleadings and evidence in this case, I find the Commissioner's decision is supported by substantial evidence and Plaintiff's Complaint should be DISMISSED.

Plaintiff is sixty-one years old. (Tr. 2724.) He testified he has a juris doctor degree and

---

[1] Plaintiff amended his onset date from June 30, 2014, to November 3, 2014, to coincide with his fiftieth birthday. (Tr. 2802.)

has past relevant work as an attorney. (Tr. 2725-2726, 2866.)

The ALJ[2] found Mr. Durand had not engaged in substantial gainful activity since June 30, 2014, the alleged onset date. (Tr. 2853.) The ALJ determined that Mr. Durand has severe impairments in the form of major depressive disorder, alcohol-induced mood disorder, and alcoholic neuropathy. (*Id*.) At step three, the ALJ found Plaintiff met the criteria for listing 12.04 for depressive, bipolar, and related disorders, at 20 C.F.R. Pt. 404, Subpt. P, App. 1, §12.04, (Tr. 2693-2697), but ultimately determined Mr. Durand was not disabled during the relevant period because a substance use disorder was a contributing factor material to the determination of disability. (Tr. 2688-2704.) The ALJ then determined that if Mr. Durand stopped his substance abuse, he would have had the residual functional capacity ("RFC") to perform a reduced range of light work given his physical and mental impairments. (Tr. 2856.) Considering the RFC findings, the ALJ concluded that Mr. Durand was incapable of performing his past relevant work as an attorney. (Tr. 2858.) So, the ALJ utilized the services of a vocational expert to determine if jobs existed in significant numbers that Plaintiff could perform, despite his impairments. (Tr. 2786-2793.) Based in part upon the testimony of the vocational expert, coupled with factors such as Mr. Durand's age, education, and past relevant work, the ALJ determined Plaintiff could perform the jobs of routing clerk, price tag ticketer, and housekeeper. (Tr. 2703.) Accordingly, the ALJ concluded – if he stopped the substance abuse - Mr. Durand would not be disabled during the relevant period. (Tr. 2704.)

---

[2] The ALJ followed the required sequential analysis to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; and (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(a)-(g) and 404.1520(a)-(g).

The Appeals Council received and considered additional evidence, then denied Plaintiff's request for a review of the ALJ's decision, making his decision the final decision of the Commissioner. (Tr. 2679-2683.) Plaintiff filed the instant Complaint initiating this appeal. (Doc. No. 2.)

In support of his Complaint, Mr. Durand says that the ALJ failed to develop the record, erred in his RFC assessment, improperly relied on the vocational expert, and failed to correctly apply the regulations regarding his substance abuse. (Doc. No. 7 at 9-30.) For the following reasons, I find no merit to Plaintiff's arguments.

About the ALJ failing to develop the record, Plaintiff cites to his requests to the Administration requesting consultative examinations. He says, "As to the mental component, it remains Claimant's position that MSCE to be performed by Patricia Griffen, Ph.D., in Little Rock, with attached interrogatories is necessary for proper record development." (*Id.* at 10.) Later he says, "The ALJ erred in rejecting Plaintiff's petition for physical CE. The same legal theory and argument applies as to the worsening effects of Plaintiff's neuropathy in the ensuing two years after the DDS opinion evidence." (*Id.* at 14.)

Plaintiff bears a heavy burden in showing the record has been inadequately developed. He must show both a failure to develop necessary evidence and unfairness or prejudice from that failure. *Combs v. Astrue*, 243 Fed.Appx. 200, 204 (8th Cir. 2007). Plaintiff has shown neither. Accordingly, given my limited review under the law and my careful assessment of the ALJ's opinion, the extensive medical record, and the briefs from the respective parties, I find the ALJ's RFC determination is supported by substantial evidence.

Plaintiff challenges the medical expert, Joseph Malancharuvil, Ph.D., utilized by the ALJ. He says, "The [expert] is a theologian/psychologist and not a psychiatrist and cannot render

opinion evidence as to the claimant's associated neurological residuals and neurological symptoms during the relevant time period. He did not go to medical school and is not a physician or psychiatrist." (Doc. No. 7 at 9.) Dr. Malancharuvil provided his expert opinion answering interrogatories, (Tr. 7871- 7883), and through testifying at an administrative hearing. (Tr. 2806-2829.) He concluded that Plaintiff's condition improved when he stopped using alcohol. The ALJ gave significant weight to Dr. Malancharuvil's opinion regarding Lising 12.04 but found Plaintiff had additional mental impairments exclusive of his alcohol abuse – giving Dr. Malancharuvil's opinions only partial weight in that regard. (Tr. 2697.) The ALJ concluded:

> The undersigned finds that during the period November 3, 2014, the alleged onset date, through July 31, 2017, including substance abuse and during acute periods of intoxication, the claimant had disabling marked mental impairments in interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. The undersigned concurs with the medical expert Malancharuvil's findings and finds that the claimant's depressive disorder meets the requirements for Listing 12.04 (Depressive, Bipolar and Related Disorders) including alcohol abuse, but that substance abuse is material to the disability determination.

(*Id.*)

After careful review, I find the ALJ provided a thoughtful evaluation of Dr. Malancharuvil's testimony. And Dr. Malancharuvil's testimony is well supported by the record. As the Commissioner recites:

> Dr. Malancharuvil testified that the medical evidence from the relevant period consistently referenced Plaintiff's chronic and severe alcohol abuse, noting for example, the daily use of a half a liter or half a gallon of vodka, his numerous admissions for detoxification without much help during the relevant period, and evidence showing that he had suicidal ideation when he was using alcohol (Tr. 2694, 2806-2808). Dr. Malancharuvil also testified that Plaintiff's mental status when actively abusing or withdrawing was significantly compromised, but improved and was functionally intact when he was detoxifying and sober (Tr. 2694, 2809, 2811-2812). Dr. Malancharuvil testified that without alcohol abuse, Plaintiff could perform simple to moderately detailed, 4 to 5 step tasks, in a routine work setting; he could frequently interact with co-workers and supervisors and

occasionally interact with the general public; and he should have no hazardous or fast-moving machinery because of flashbacks/withdrawals (Tr. 2695, 2812).

(Doc. No. 9 at 14.)

I realize Plaintiff would have preferred having psychologist Patricia Griffen serve as the medical expert in this case. (Doc. No. 7 at 10.) But there was nothing to stop Plaintiff from calling upon Dr. Griffen to provide her expert opinions. Plaintiff says, "Dr. Griffen has been contacted and will not provide opinion evidence and examination except through DDS contract and solicitation." (*Id.*) Maybe this means Plaintiff was unable to afford the cost of hiring her to serve as his expert, but Plaintiff is reminded he bears the burden of proving his disability. *E.g., Sykes v. Bowen*, 854 F.2d 284, 285 (8th Cir. 1988). Thus, Plaintiff bore the responsibility of presenting the strongest case possible. *Thomas v. Sullivan*, 928 F.2d 255, 260 (8th Cir. 1991). Mr. Durand failed to do so. And I find it ironic that Plaintiff knocks Dr. Malancharuvil because he "did not go to medical school and is not a physician or psychiatrist" when the same can be said of Dr. Griffen.

Regarding his physical impairments, Plaintiff makes a fair point that much of the evidence came after the state agency doctors rendered their 2015 opinions. However, the Commissioner makes an even more compelling point about there being little value of additional consultative examinations being performed seven years after the relevant period ended in 2017. (Doc. No. 9 at 9-10.) For example, Plaintiff says, "The lumbar MRI relied upon by the ALJ to adjudicate that the spine impairment had degenerative changes meeting severity was dated after DDS and not exhibited until 2021 with the Pain Treatment Centers of America records." (Doc. No. 7 at 11-12.) The MRI results show a "broad-based disc bulge with posterior annual tear at the L3-4 and L4-5 levels without nerve root compression" and broad-based disc bulge, right paracentral protrusion, posterior annular tear and facet hypertrophy at the L5-S1 level contribute to abutment of bilateral descending S1 nerves." (Tr. 4576.) And "There is a transitional nature of the lumbosacral

7

junction." (*Id.*)  Logically, any deterioration could have happened over the four years after the relevant period as was the case with Plaintiff's neuropathy.  The ALJ concluded, "As the undersigned noted in the earlier decision, after the time period under adjudication in this case the overall record supported a further progression of neuropathy down to sedentary exertional limitations." (Tr. 2702.)  Regardless, the ALJ found the state agency doctors to be only partially persuasive saying, "While supported by a records review, the evidence developed through the hearing level is more consistent with the additional nonexertional upper-extremity limitations set forth above." (*Id.*)

Here, the ALJ was permitted to issue his decision without obtaining additional evidence if the record was sufficient to make an informed decision. *E.g., Haley v. Massanari*, 258 F.3d 742, 749 (8th Cir. 2001); *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995).  Here, the nearly eight-thousand-page record contains ample medical evidence supporting the ALJ's conclusions during the relevant period.

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (emphasis added).  A "physical or mental impairment . . . results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).  I am simply unable to find support in the record to merit reversal of the ALJ's decision in this case.  Especially for this limited time from November 3, 2014, through July 31, 2017.

For the same reason I find no error with the ALJ's RFC assessment.  Plaintiff's main issue is his mental health and substance abuse.  The record clearly shows this.  He does have – as the

8

ALJ found – "severe" neuropathy. But the record supports the ALJ's conclusion that Plaintiff can perform light work activities. Plaintiff's argument largely relies on his subjective symptoms. In his brief, Plaintiff says, "The testimony was the plaintiff could not walk very far, maybe five minutes; and that he could only stand five minutes. [Tr. 2772-73] He had frequent falls and required a shower chair and for his lawyer friend to help him shower safely without falling. [Tr. 2780]." (Doc. No. 7 at 17.) But treatment notes from August 31, 2017, reveal Plaintiff "exercise[d] at the gym 5-6 times per week, walking on the treadmill 1.5-3.5 miles at a time." (Tr. 2405.) Accordingly, I find the ALJ's determination is supported by substantial evidence.

I have also considered Plaintiff's argument about the vocational expert's testimony and find it is misplaced. The question asked of the vocational expert was whether a hypothetical person could keep their job if "they couldn't interact appropriately." (Tr. 2792-2793.) When asked if, "They'd just be fired?" The expert testified, "Possibly." Simply put, I find no error here.

Plaintiff has advanced other arguments – including that the ALJ failed to properly apply the regulations as they relate to Plaintiff's alcohol abuse - which I find are without merit. Counsel for both sides have done admirable jobs advocating for their respective positions in this complex case. But it is not the task of a court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence on the record as a whole which supports the decision of the ALJ. *E.g., Mapes v. Chater*, 82 F.3d 259, 262 (8th Cir. 1996); *Pratt v. Sullivan*, 956 F.2d 830, 833 (8th Cir. 1992). In this case, there is.

I have reviewed the entire record, including the briefs, the ALJ's decision, the transcript of the hearing, and the medical evidence. Even though there is evidence to support Plaintiff's claims, the record contains ample support as a whole that "a reasonable mind might accept as adequate to

support [the] conclusion" of the ALJ in this case. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also, Robertson v. Sullivan*, 925 F.2d 1124, 1126-27 (8th Cir. 1991).   The Commissioner's decision is not based on legal error.

IT IS, THEREFORE, RECOMMENDED that the final decision of the Commissioner be affirmed, and Plaintiff's Complaint be dismissed with prejudice.

DATED this 17th day of March 2026.

_____

JOE J.   VOLPE
UNITED STATES MAGISTRATE JUDGE